UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| VIGILANT INSURANCE COMPANY<br>as subrogee of DR. MANJIT WADHWA<br><br>Plaintiff,<br>v.<br><br>INTERLINE BRANDS, INC., MTD<br>(USA) Corp., and ZHEJIANG DINGBO<br>PLUMBING MANUFACTURING CO.,<br>LTD.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. _____<br>JURY DEMANDED |

## ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **VIGILANT INSURANCE COMPANY** (hereinafter "NSC") **as subrogee of DR. MANJIT WADHWA** in the above referenced matter, complaining of **INTERLINE BRANDS, INC., MTD (USA) Corp., and ZHEJIANG DINGBO PLUMBING MANUFACTURING CO., LTD.**, and for its Original Complaint would respectfully show the Court as follows:

### I. PARTIES

1.   Plaintiff Vigilant Insurance Company ("Vigilant") is foreign insurance company. At all relevant times, Vigilant issued a policy of homeowner's insurance to Dr. Manjit Wadhwa, that insured the residence located at 2 Muirfield Dr., Laplace, Louisiana 70068 against damage, loss and/or peril. Vigilant is subrogated to the rights of its insureds to the extent of its payments made under the policy of insurance.

2.   Defendant, Interline Brands, Inc. (hereinafter "Interline") is a New Jersey company with its principal place of business located at 701 San Marco Blvd., Jacksonville,

Florida 32207. Interline can be served with citation and a copy of Original Complaint by serving its registered agent for service of process, to wit:

>CSC of St. Tammany Parish, Inc.
>4600 Highway 22, Suite 9
>Mandeville, Louisiana 70471

Plaintiff requests that a summons be issued for service with a copy of Original Complaint.

3. Defendant, MTD (USA) Corp. is a Chinese company with its principal place of business located at NO. 310 North Zhongshan Road, Hangzhou, China 310003. Defendant MTD (USA) Corp. can be served through the Central Authority for China by the Hague Convention at the following address:

>MTD (USA) Corp.
>NO. 310 North Zhongshan Road
>Hangzhou, China 310003

Plaintiff requests that a citation be issued for service with a copy of the Original Complaint.

4. Defendant, Zhejiang Dingbo Plumbing Manufacturing Co. Ltd. (hereinafter "Dingbo") is a Chinese company with its principal place of business located at No. 1 Longshen Industrial Zone, Shifu Road, Zhejiang Province, Wenzhov City, China. Dingbo is a manufacturer of tubing and components for plumbing products. Defendant Dingbo can be served through the Central Authority for China by the Hague Convention at the following address:

>Zhejiang Dingbo Plumbing Manufacturing Co. Ltd.
>
>No. 1 Longshen Industrial Zone
>
>Shifu Road
>Zhejiang Province
>Wenzho City, China

Plaintiff requests that a citation be issued for service with a copy of the First Amended Complaint.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §1332(a)(2) because the suit is between citizens of a state and citizens of a foreign state, and the amount in controversy exceeds $75,000, excluding interest and costs.

6. Venue is appropriate pursuant to 28 U.S.C. §1391(a)(2), as the events giving rise to the claim occurred, or a substantial part of the property that was damaged as a result of the incident is located in St. John the Baptist Parish, Louisiana, which is within the jurisdiction of the United States District Court for the Eastern District of Louisiana.

7. This court has jurisdiction over Defendants because they: (1) transacted business and/or entered into sales contracts or agreements to supply goods and services that they knew would be distributed and sold to persons within the State of Louisiana; (2) engaged in a course of conduct more specifically set forth below that resulted in injury to persons or property within the State of Louisiana; (3) placed products into the stream of commerce with the expectation and belief that the products would enter the State of Louisiana; (4) committed a tort within the State of Louisiana; and (5) otherwise subjected itself to the jurisdiction of courts sitting in the State of Louisiana in accordance with the minimum contacts notion of due process.

8. Plaintiff incurred damages in excess of the minimum jurisdictional limits of this Court. The total damages include, but are not limited to damages to the dwelling and contents therein, and related costs and expenses, which were caused by the actions and/or inactions of the Defendants. Therefore, jurisdiction and venue are proper.

### III. FACTS

9. At all relevant times, Dr. Manjit Wadhwa owned the residential property located at 2 Muirfield Drive, Laplace, Louisiana 70068 (hereinafter "Subject Property" or "Wadhwa home").

10. The Subject Property was originally built in 1988, and an addition was added in 2005. The Subject Property is approximately 10,000 square feet.

11. On February 4, 2016, it was discovered that a DuraPro stainless steel toilet tank connector, Mfg. # 231271 (hereinafter "DuraPro connector" or "subject DuraPro connector"), which was connected to a toilet located on the second floor of the Wadhwa home, had failed. As a result of the failure, water leaked from the point of failure and flowed into a custom entertainment room.

12. At the time of the incident, Dr. Manjit Wadhwa was asleep. He awoke to the sound of water leaking and discovered the broken DuraPro connector and resulting property damage.

13. Upon information and belief, Defendant Zhejiang Dingbo Plumbing Manufacturing Co., Ltd. engineered, designed, manufactured, and produced tubing and components for plumbing products, including the subject DuraPro connector for placement into trade or commerce.

14. At all times relevant, MTD imported and sold the DuraPro connector, and is in the business of importing and selling the DuraPro connector for resae and is the alter ego of the manufacturer.

15. Upon information and belief, DuraPro is a trade name and/or brand name of Interline Brands, Inc. (hereinafter "Interline"). Interline labeled the product as its own or otherwise held itself out as the manufacturer.

16. The incident was caused by the failure of a threaded polyacetal coupling nut and/or similar component that joins the DuraPro steel toilet tank connector to the toilet, which prematurely cracked and/or split and leaked water throughout the Horner home.

17. Inspection of the DuraPro connector subsequent to the incident showed no tool marks, other markings or damage to the exterior of the product that may have caused or contributed to the failure.

18. The subject DuraPro connector contained a design and/or manufacturing flaw or defect, which compromised its integrity and rendered it susceptible to failure.

19. As a direct and proximate result of the DuraPro connector failure that is the subject of this litigation, Plaintiff sustained substantial damages in excess of the Court's minimum jurisdictional limits.

## IV.   CAUSES OF ACTION

A. **Defendant Interline Brands: Louisiana Products Liability Act ("LPLA")**

20. Plaintiff repleads, restates, and realleges the previous paragraphs above as if set forth fully herein, and would further show the Court as follows:

21. Defendant Interline labeled the DuraPro connector as its own product or otherwise held itself out to be the manufacturer. Therefore, Interline is a "manufacturer," as defined by LPLA.

22. Interline's product was unreasonably dangerous in construction and/or composition because, at the time that DuraPro connector left Interline's possession and control,

it deviated in a material way from the manufacturer's specifications or performance standards. Specifically, the DuraPro connector's components were manufactured with substandard material and/or with voids in the molding that caused the nut to fracture and separate after being tightened to the commode. The automatic flush valve's defect in construction or composition was a proximate cause of Plaintiff's damages.

23. In addition to the DuraPro connector being defective in construction or composition, it was unreasonably dangerous in design. Specifically, the DuraPro connector's nut was not properly designed to withstand the forces applied when it was tighted, which nut to fracture and separate. At the time that the DuraPro connector left Interline's control, there existed an alternative design that was capable of preventing Plaintiff's damages. The DuraPro connector's defective design was a proximate cause of Plaintiff's damages.

24. The DuraPro connector was unreasonably dangerous because there was no warning or instruction regarding how far to tighten the nut, to inspect the nut for cracks or fractures or that the plastic nut could fracture after it was installed. The fact that the DruaPro connector could fracture and seperate—causing a continuous flow of water—could not be contemplated by an ordinary user or handler of the product. Interline's failure to provide an adequate warning was a proximate cause of Plaintiffs' damages.

25. Alternatively, Interline acquired knowledge and information or, had it acted as a reasonably prudent manufacturer, would have acquired knowledge that the DuraPro connector's nut could fracture and fail. Interline failed to use reasonable care to provide an adequate warning of the DuraPro connector's characteristics and danger to users and handlers of the product.

B.  Defendant MTD: Louisiana Products Liability Act ("LPLA")

26. Plaintiff repleads, restates, and realleges the previous paragraphs above as if set forth fully herein, and would further show the Court as follows:

27. Defendant MTD imported the DuraPro connector from China and is in the business of importing and selling products. MTD is the alter ego of the alien manufacturer. Therefore, MTD is a "manufacturer," as defined by LPLA.

28. MTD's product was unreasonably dangerous in construction and/or composition because, at the time that DuraPro connector left MTD's possession and control, it deviated in a material way from the manufacturer's specifications or performance standards. Specifically, the DuraPro connector's components were manufactured with substandard material and/or with voids in the molding that caused the nut to fracture and separate after being tightened to the commode. The automatic flush valve's defect in construction or composition was a proximate cause of Plaintiff's damages.

29. In addition to the DuraPro connector being defective in construction or composition, it was unreasonably dangerous in design. Specifically, the DuraPro connector's nut was not properly designed to withstand the forces applied when it was tighted, which nut to fracture and separate. At the time that the DuraPro connector left MTD's control, there existed an alternative design that was capable of preventing Plaintiff's damages. The DuraPro connector's defective design was a proximate cause of Plaintiff's damages.

30. The DuraPro connector was unreasonably dangerous because there was no warning or instruction regarding how far to tighten the nut, to inspect the nut for cracks or fractures or that the plastic nut could fracture after it was installed. The fact that the DruaPro connector could fracture and seperate—causing a continuous flow of water—could not be

contemplated by an ordinary user or handler of the product. MTD's failure to provide an adequate warning was a proximate cause of Plaintiffs' damages.

31. Alternatively, MTD acquired knowledge and information or, had it acted as a reasonably prudent manufacturer, would have acquired knowledge that the DuraPro connector's nut could fracture and fail. MTD failed to use reasonable care to provide an adequate warning of the DuraPro connector's characteristics and danger to users and handlers of the product.

C. **Defendant Dingbo Plumbing: Louisiana Product Liability Act ("LPLA")**

32. Plaintiff repleads, restates, and realleges the previous paragraphs above as if set forth fully herein, and would further show the Court as follows:

33. Upon information and belief, Dingbo Plumbing manufactured the DuraPro connector at its manufacturing facility in China.

34. Dingbo Plumbing's product was unreasonably dangerous in construction and/or composition because, at the time that DuraPro connector left Dingbo Plumbing's possession and control, it deviated in a material way from the manufacturer's specifications or performance standards. Specifically, the DuraPro connector's components were manufactured with substandard material and/or with voids in the molding that caused the nut to fracture and separate after being tightened to the commode. The automatic flush valve's defect in construction or composition was a proximate cause of Plaintiff's damages.

35. In addition to the DuraPro connector being defective in construction or composition, it was unreasonably dangerous in design. Specifically, the DuraPro connector's nut was not properly designed to withstand the forces applied when it was tighted, which nut to fracture and separate. At the time that the DuraPro connector left Dingbo Plumbing's control,

there existed an alternative design that was capable of preventing Plaintiff's damages. The DuraPro connector's defective design was a proximate cause of Plaintiff's damages.

36. The DuraPro connector was unreasonably dangerous because there was no warning or instruction regarding how far to tighten the nut, to inspect the nut for cracks or fractures or that the plastic nut could fracture after it was installed. The fact that the DruaPro connector could fracture and seperate—causing a continuous flow of water—could not be contemplated by an ordinary user or handler of the product. Dingbo Plumbing's failure to provide an adequate warning was a proximate cause of Plaintiffs' damages.

37. Alternatively, Dingbo Plumbing acquired knowledge and information or, had it acted as a reasonably prudent manufacturer, would have acquired knowledge that the DuraPro connector's nut could fracture and fail. Dingbo Plumbing failed to use reasonable care to provide an adequate warning of the DuraPro connector's characteristics and danger to users and handlers of the product.

## JURY DEMAND

38. Plaintiff respectfully demands a jury trial.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff, **VIGILANT INSURANCE COMPANY as subrogee of DR. MANJIT WADHWA**, prays that the Defendant, **MTD BRANDS, INC., MTD (USA) Corp.,** and **ZHEJIANG DINGBO PLUMBING MANUFACTURING CO., LTD.** take notice of the filing of Plaintiff's Original Complaint, and be served with summons, and that upon a final hearing, the Court enter a judgment in favor of Plaintiff against Defendant for all damages, interest from the date of judicial demand until final,

unappealable, judgment, court costs, and for such other and further relief, general or special, both at law and in equity, to which Plaintiff may show itself to be justly entitled.

                **COZEN O'CONNOR**

                /s/ Jake Skaggs
                _____

                Jake P. Skaggs
                LBN: 33454
                1221 McKinney, Ste. 2900
                Houston, Texas 77584
                (832) 214-3900 – office
                (832) 214-3905 - fax
                Email: jskaggs@cozen.com

                **ATTORNEYS FOR PLAINTIFF**